# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| CHARLES J. TROIS, § § *Plaintiff,* § § v. § § APPLE TREE AUCTION CENTER, INC. § and SAMUEL SCHNAIDT, § § *Defendants.* § | Civil Action No. SA-16-CV-746-XR |

## ORDER

On this date, the Court considered Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a), as re-urged and supplemented after remand.

On June 23, 2016, Plaintiff Charles J. Trois filed this action against Defendants Apple Tree Auction Center, Inc. and Samuel Schnaidt. Trois alleges that he was contacted by Defendants to sell by auction several of his collectibles. After certain discussions and negotiations, Plaintiff prepared an inventory of his items, packed them into a trailer and truck, and drove them to Newark, Ohio in May 2016. He met with Schnaidt at Apple Tree's auction center to show him the items, and met with "the lady who researches art and bronzes and the gentleman who evaluates firearms for Apple Tree." Docket no. 4-1 at 3. They inspected the items, discussed pricing, and then Plaintiff signed an agreement. Apple Tree paid Trois a cash advance of $300,000. Apple Tree then conducted the auction in Newark, Ohio over three days in June 2016. The eventual net proceeds totaled only approximately $100,000, and thus Apple Tree sought repayment of $200,000 of the advance.

Trois sued Apple Tree and Schnaidt for fraud and breach of contract, arguing that Defendants failed to perform the auction as agreed. The contract claim is based on the contract executed and performed in Ohio, and the fraud claim is based on alleged misrepresentations made during a conference call from Ohio to Texas. Plaintiff resides in Texas; Apple Tree is an Ohio corporation; and Schnaidt resides in Ohio.

Defendants removed the case to this Court on July 22, 2016. On the same day, hoping that this case would be dismissed for lack of personal jurisdiction, Apple Tree filed suit against Trois in state court in Ohio, alleging breach of contract, fraud, unjust enrichment, and action on an account, arising out of the same facts as this lawsuit and seeking to recover the $200,000 cash advance balance. Thus, the Ohio case was filed approximately 29 days after this case.

Defendants moved to dismiss the Texas lawsuit on the basis of lack of personal jurisdiction and improper venue, and alternatively moved to transfer venue to Ohio under 28 U.S.C. § 1404(a). On November 27, 2016, this Court granted the motion to dismiss, finding no personal jurisdiction on the contract claim and improper venue on the fraud claim. The Court entered a judgment of dismissal without prejudice. Plaintiff appealed.

Meanwhile, the Ohio litigation proceeded. Trois removed the Ohio state-court case to the Southern District of Ohio on September 16, 2016. Trois moved to dismiss the case under the first-to-file rule. The motion was denied as moot on June 5, 2017 because this case had been dismissed. Trois then filed his answer and counterclaims on July 3, 2017. Trois asserted several counterclaims, including fraud/negligent misrepresentation and violations of the Ohio Consumer Sales Practice Act. The fraud/negligent misrepresentation claim is essentially the

same as Trois's fraud claim here. The parties have engaged in depositions and written discovery, and discovery is set to conclude on July 30, 2018.

On February 5, 2018, the Fifth Circuit affirmed the dismissal of the contract claim for lack of personal jurisdiction, but reversed this Court's dismissal of the fraud claim, finding that venue was proper here, and remanded that claim to this Court. This Court then issued an Order finding that Defendants' motion to transfer venue under 28 U.S.C. § 1404(a) was ripe, and ordered Defendants to advise the Court whether they intended to re-urge the motion and, if so, whether it should be supplemented to account for developments since its filing. Defendants have re-urged and supplemented the motion, and Plaintiff remains opposed.

Defendants move the Court to transfer the remaining fraud claim to the Southern District of Ohio, where the parallel litigation of the same claim (and additional claims) is pending. Trois opposes the transfer, arguing that Ohio is not clearly more convenient and that he will re-urge his motion to dismiss under the first-to-file rule. Trois argues that Ohio law is clear that the first-filed action is to take priority, so there is a likelihood that the Ohio judge will dismiss Apple Tree's action in Ohio, leaving Apple Tree to assert its claims as counterclaims in this action (which, Trois argues, would waive any personal jurisdiction bar to his contract claim), and there would only be one lawsuit here.

## Analysis

I. **First-to-File Rule**

The Court first considers Trois's arguments under the first-to-file rule. The Fifth Circuit follows the first-to-file rule when separate actions are filed in different district courts asserting the same claims. In such instances, the principle of comity requires federal district

courts to exercise care to avoid interferences with each other's affairs. *W. Guld Maritime Ass'n v. ILA Deep Sea Local*, 751 F.2d 721, 728 (5th Cir. 1985). As between federal district courts, the general principle is to avoid duplicative litigation; the underlying concerns are to avoid the waste of duplication, to avoid rulings that may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result. *Id.* Normally, sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court that first acquired jurisdiction should try the lawsuit. *Id.* at 730. In addition, the Fifth Circuit adheres to the rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed. *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015).

However, the first-to-file rule does not trump application of § 1404(a); they are independent inquiries and the existence of the Ohio lawsuit does not preclude this Court from considering whether transfer under § 1404(a) is appropriate. *See Zimmer Enters., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 989 (S.D. Ohio 2007) ("The first-filed rule does not supersede the inquiry into the balance of convenience under § 1404(a) and a transfer justified under § 1404(a) [may be] proper even if the action to be transferred was filed before a related action was filed in the transferee district.") (quoting *Societe Generale v. Fla. Health Sciences. Ctr., Inc.*, 2003 WL 22852656, *8, 2003 U.S. Dist. LEXIS 21502, *24 (S.D.N.Y. Dec. 2, 2003)); *Abercrombie & Fitch Co. v. Ace European Group*, No. 2:11-CV-1114, 2012 WL 2995171, at *4 (S.D. Ohio July 23, 2012) ("a determination that it was the first to file is not outcome determinative with respect to Ace's § 1404(a) Motion. Instead, this Court must

4

proceed to consider the merits of Ace's Motion regardless of whether this action was the first-, second-, or only-filed action."); *see also Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F. Supp. 1334, 1349 (N.D. Iowa 1996) ("[I]n circumstances where a § 1404(a) analysis dictates transfer, the first-filed rule should be abrogated.").

The Seventh Circuit surveyed the circuit courts and concluded that the first-to-file rule does not constrain the Court's discretion in ruling on a § 1404(a) transfer motion, and the order of filing should simply be part of the § 1404(a) transfer analysis. *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973 (7th Cir. 2010). Although the Fifth Circuit has not squarely addressed the interplay of the first-to-file rule and § 1404(a), it has clearly recognized that the first-filed court may transfer the first-filed case to the second-filed court. *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 n.1 (5th Cir 1985) (noting that first-filed court may transfer the first-filed action and the actions consolidated in the second-filed court).[1] "Therefore, a determination that [this] action was the first-filed . . . does not preclude the Court from determining that transfer of venue is proper under 28 U.S.C. § 1404(a)." *Zimmer*, 478 F. Supp. 2d at 989. If transfer is appropriate, there will be no parallel litigation in separate district courts.

**B. Motion to Transfer under § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The threshold issue under § 1404(a) is whether the civil action "might have been brought" in the district to which transfer is sought. 28 U.S.C. §

---

[1] The Fifth Circuit has held that transfer of the second-filed case to the first-filed case forum is consistent with the first-to-file rule, but it has not held that transfer of the first-filed case to the second-filed case forum would be improper. *See In re Spillman Dev. Group*, 710 F.3d 299, 307 (5th Cir. 2013).

1404(a); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). In this case, it is undisputed that this action could have been brought in the Southern District of Ohio. This claim is already proceeding there, and Plaintiff has conceded venue and jurisdiction over the claim.

Once it is established that a civil action could have been brought in the destination venue, § 1404(a) gives the district court discretion to decide whether transfer is appropriate by balancing case-specific factors concerning the parties' private interests in convenience and the public interest of fair administration of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Robinson v. Hillcrest Baptist Med. Ctr.*, No. A-09-CA-640-SS, 2009 WL 4639901, at *2 (W.D. Tex. Nov. 30, 2009) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

"The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* These private and public interest factors are neither exhaustive nor exclusive, and no one factor holds dispositive weight. *Volkswagen*, 545 F.3d at 315. The burden to show good cause for transfer rests on the moving party. *Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56

(5th Cir. 1963). To succeed on a motion to transfer venue, the moving party must show that, based on the public and private interest factors, the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen*, 545 F.3d at 315.

Defendants assert that "the relative ease to access of sources of proof in Ohio is significantly greater than that in Texas." Docket no. 2 at 16. It appears that the relevant physical evidence is located in Ohio. Defendant notes that all of the remaining auction items are in Ohio, and presumably documents related to the auction are also in Ohio. Defendants contend that, after the auction, it was determined that some items were forgeries, and the remaining unsold merchandise is evidence supporting Defendants' defenses and may eventually be used in front of a jury. Plaintiff points to no physical evidence or documents that are located in Texas. This factor weighs in favor of transfer.

Defendants further contend that availability of compulsory process to secure the attendance of witnesses and the cost of attendance for willing witnesses weigh in favor of transfer. Although Plaintiff resides in this district, Apple Tree is an Ohio corporation with its sole place of business in Newark, Ohio, which is in the Southern District of Ohio. Defendant Schnaidt resides in Granville, Ohio, also in the Southern District of Ohio.

Defendants argue that the auction is central to Plaintiff's claim, that it was conducted in Newark, Ohio, and that witnesses would be the bidders in attendance as well as those who work for Apple Tree. Defendants assert that of the 371 bidders in attendance at the auctions, over 91% are Ohio residents, and all of Apple Tree's employees are residents of the Southern District of Ohio, making compulsory process to secure the attendance of witnesses at trial significantly cost prohibitive or impossible if trial were in Texas. Defendants further assert

that any expert testimony relevant to the issue of whether Apple Tree conducted the auctions in a manner that comports with the standards applicable to Ohio auctioneers would come from an expert or experts residing in Ohio and familiar with Ohio auctioneer standards.

Plaintiff contends that Defendants' assertions are conclusory and that they fail to explain how or why the testimony of the bidders or employees would be relevant or necessary to the claims in this case. However, Defendant Apple Tree cites to its disclosures, in which it identifies by name as potential witnesses nine Ohio residents who attended the auction or bid on items and would testify about the conduct of the auction, the market, and reasons for their respective bids (such as lack of authentication). Such testimony is highly relevant to Plaintiff's claim and the Defendants' defense.

Plaintiff identifies thirteen individuals that he anticipates calling as witnesses, all of whom reside in Texas. These include (1) Jeffrey Collins, who attended one of the auctions and resides in San Antonio, (2) plaintiff's son Ryder Trois and his friend, Matt Pennich, both of whom live in Texas and were with Plaintiff when one of the auctions took place and could "confirm that we were not able to access Apple Tree's website to view the auction"; (3) Robert Haunstein, who lives in San Antonio and "will also testify about the difficulties he encountered in attempting to log on to Apple Tree's website during the auction"; (4) Rebecca Trois and Vanessa Syring, who live in Texas and "attempted to view the auction on-line from Gillespie County and will testify that they were not able to do so"; (5) Plaintiff's wife, who lives in Austin and was present when Michael Barrick came to visit Plaintiff in Texas and "will testify about the representations Barrick made to me about Apple Tree's services"; (6) Carlos Pennick and Michelle Scripps, who live in Texas, "were also present during some of

the conversations between Plaintiff and Barrick and "will be able to testify as to the representations Barrick made to me"; (7) expert witnesses Scott Franks and Jan Harrison of A&S Actions in Waco, Texas to testify as to the value of the items Plaintiff sold and how the auction was conducted; (8) Don Young of Young's Gun in Kerrville, Texas to serve as an expert on the value of the many of the firearms sold at the auction because Young is personally familiar with many of the firearms; and (9) Teddy Trotta Bono of "Antiques Roadshow" fame, as expert on the value of the Native American and western apparel Plaintiff sold at the auction. Docket no. 401 at 4.

Neither Texas nor Ohio has subpoena power over all possible witnesses. Any trial subpoenas for witnesses to travel more than 100 miles would be subject to motions to quash under Rule 45. *In re Volkswagen*, 545 F.3d at 316. All parties have identified witnesses who could provide relevant testimony that would be outside subpoena range for trial. Defendants have identified several non-party witnesses who could not be compelled to testify at trial in Texas or for whom doing so would be costly. Plaintiff offers testimony from some family members and acquaintances that they could not access the on-line auction. This testimony is relatively straightforward, and these witnesses could be deposed in Texas and their deposition testimony utilized in the Ohio case. Further, Plaintiff's proposed testimony concerning Barrick's representations, while relevant, would not be key evidence for Trois's fraud claims given that the Fifth Circuit has held that Barrick was not acting as Apple Tree's agent. Nevertheless, Plaintiff identifies some witnesses who could not be compelled to testify in Ohio or for whom doing so would be costly. The Court finds that this factor is neutral.

With regard to cost of attendance for willing witnesses, Defendants note that its employees and bidders who might come to Texas to testify would incur significant expense. However, Texas witnesses would also incur expense to testify at trial in Ohio. This factor is neutral.

Defendants rely heavily on the general factor -- "all other practical problems that make trial of a case easy, expeditious and inexpensive" – citing the fact that Plaintiff has already been litigating his fraud claim in the Ohio case. Plaintiff engaged in discovery, and has identified twenty witnesses and designated five expert witnesses. Defendants contend that not transferring this case would result in extraordinary expense because the case has already progressed in the Ohio court. The only claim remaining here – Plaintiff's fraud claim – has been substantially litigated in Ohio. The Court agrees that this weighs strongly in favor of transfer.

In addition, the Court finds that the fact that Plaintiff could not litigate all of his claims in this forum given the lack of personal jurisdiction over the contract claims weighs heavily in favor of transfer. The only claim pending here is Plaintiff's fraud claim, while in Ohio Trois asserted that fraud claim, plus additional claims for breach of contract, unjust enrichment, negligence, bailment, replevin, conversion/trespass to chattel, and the Ohio CSPA. Certainly Ohio is the better forum for resolving all of the claims and issues among the parties in a single proceeding, given that it has jurisdiction over all claims and parties. Plaintiff asserts that he will dismiss his fraud claim from the Ohio suit and pursue it here if the Court does not transfer the case, but having two separate suits involving the same underlying events does not promote judicial efficiency. And findings in either case could undermine or potentially conflict with

findings in the other, given the conduct of the auction would be relevant to both the fraud and contract claims.

To avoid this, Plaintiff further contends that the first-to-file rule dictates that Defendants' Ohio action should now be dismissed, in which case Defendants would then have to assert their claims as counterclaims here, thus consenting to personal jurisdiction and allowing Trois to pursue his claims for which this Court would otherwise lack personal jurisdiction. But that ignores § 1404(a) and the current realities. If no second suit had been filed, this case would have been appropriate for transfer to Ohio, which was the only court that could resolve all claims. But the fact that the second suit was filed does not mean that all claims must now proceed in this Court. On the contrary, at this point in time, the fact that the Ohio litigation has been proceeding during the appeal in this case weighs very strongly in favor of transfer. *See, e.g.*, *Nader v. McAuliffe*, 549 F.Supp.2d 760, 763 (E.D.Va. 2008) (although action was filed before the "essentially identical" action pending in the transferee court, the balance of the 1404(a) factors warranted transfer "in order to prevent an extravagantly wasteful and useless duplication of the time and effort of the federal courts"); *Koresko v. Nationwide life Ins. Co.*, 403 F. Supp. 2d 394, 399 (E.D. Pa. 2005) (courts have discretion to depart from the first-to-file rule under certain circumstances, including when the second-filed action is further along than the first-filed action).

The Court further finds that the public interest factors favor transfer. Defendants argue that the public interest factors support transfer because Ohio has "a much greater 'local interest' than Texas in the events which form the basis of Plaintiff's claim" because Apple Tree is regulated by the Ohio Department of Agriculture through the Ohio Auction

11

Commission, its auctioneers are licensed by the Ohio Department of Agriculture, and Ohio has a comprehensive set of statutes and administrative regulations governing the industry. Docket no. 2 at 16-17. Defendants assert that Ohio has a comprehensive consumer protection framework established to protect consumers from injury from auctioneers who fail to comply with Ohio law, and has established an Auction Recovery Fund the funds from which consumers injured by illegal acts of auctioneers can be made whole. Defendants argue that this local interest of Ohio is greater than any interest of Texas, which has no interest in regulating an out-of-district business transaction with an out-of-state corporation, for the sale of goods and exchange of money outside of Texas. Defendants also argue that representations made by an auctioneer are regulated by Ohio regulations and the case will require the court to engage in an analysis of Ohio law. Plaintiff responds that Texas "clearly has an interest in redressing wrongs to its residents" and that this Court can consider and interpret Ohio law and can enforce those laws under the choice-of-law doctrine.

The Court finds that these factors weigh in favor of transfer. Although Texas has some interest in harm done to a Texas resident, the relevant conduct of Defendants occurred in Ohio, and Ohio has a strong interest in the allegedly tortious conduct of its residents and in regulating auctions in Ohio. In addition, the Ohio case has already progressed substantially, and thus can proceed to resolution of all claims and parties much more expeditiously than this case. The public interest factors favor transfer.

## Conclusion

In this case, the interests of justice are clearly served by transfer. Dismissing the Ohio case and beginning anew in Texas is not convenient and does not serve the interests of justice.

12

Although Plaintiff filed the first suit, he chose a forum that could not adjudicate both of his claims. Defendants filed suit only twenty-nine days later in a forum that could adjudicate all claims. During the pending appeal in this case, the Ohio case has progressed substantially. Ohio is clearly the more appropriate and convenient forum for this litigation. Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (docket no. 15) is GRANTED and this case is transferred to the Southern District of Ohio, Eastern Division.

It is so ORDERED.

SIGNED this 12th day of July, 2018.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE